*205 OPINION.
Smith :
The first contention made by the petitioner is that through a recapitalization in 1912 there were paid in to it tangible assets consisting of $500,000 par value of common stock for which it issued $1,000,000 par value of preferred stock and $1,500,000 par value of common stock. It is its contention that the shares of stock thus paid in (of a par value of $500,000) had a cash value of $2,500,000, which amount should be included in invested capital. If this contention be denied by the Board, the petitioner, nevertheless, claims that the value of the intangible assets of the corporation in 1912 had a value of at least $150,000, which value was paid in for shares of stock and which amount should be included in invested capital. The respondent has rejected the claim of the petitioner to the inclusion of any part of the amounts mentioned.
Whatever may have been the intention of the board of directors of the petitioner corporation in November, 1912, to create a new corporation under the laws of New Jersey and to pay in to that corporation in exchange for its capital stock the capital stock "of the petitioner then outstanding, the evidence of record clearly shows that this was not done. The petitioner was organized in 1907. All that happened in 1912 and 1913, relating to its recapitalization, was that under authority obtained from the State of Illinois it increased the outstanding capital stock from $500,000 to $2,500,000, $1,000,000 of which was issued as preferred stock and $1,500,000 as common stock. The stockholders of the corporation turned in their shares of stock in exchange-for a like number of shares of the common stock of the same corporation and received a stock dividend of two shares of preferred stock and two shares of common stock for each share of stock theretofore held. The testimony of the witnesses is clear that the stockholders contributed no additional amount of property to the corporation as a result of the recapitalization. The corporation had the same amount of assets after the recapitalization as it had before.
Section 207 of the Revenue Act of 1917, and section 326 of the Revenue Act of 1918, define what may be included in invested capital in computing the excess-profits tax. Only the value of property paid in to a corporation, plus earned surplus, may be included in *206 invested capital. No contention is made that the respondent has refused to include in invested capital all amounts originally paid in to the corporation by the stockholders in exchange for shares of stock. The contention of the petitioner is simply that as a result of the recapitalization of the corporation in 1912 and 1913 the statutory invested capital was increased. We can see no merit in this contention. In News Publishing Co., 6 B. T. A. 1257, the Board held that where a corporation secures an amendment to its charter by means of which its authorized capital stock is increased, issues this stock for stock of a like par value of a corporation which held its stock, liquidates the latter corporation, and cancels its own stock which the latter held, there is not thereby anything paid in to the corporation. This decision of the Board was affirmed by the Court of Appeals of the District of Columbia in News Publishing Co. v. Blair, 29 Fed. (2d) 955. See, also, La Belle Iron Works v. United States, 256 U. S. 377, and Willcuts v. Milton Dairy Co., 275 U. S. 215.
The second contention of the petitioner, that there should be included in invested capital the value of intangible assets claimed to have been acquired in 1912, stands on no better plane .than its first contention. The claim is not sustained.
The third contention of the petitioner is that it is entitled to have its profits taxes for the years 1917, 1918, 1919, and 1920 determined under the special assessment sections of the revenue acts applicable to those years because of abnormal conditions affecting its invested capital and income in said years. The first point it makes is that under the determination of the tax liability by the Commissioner there is not reflected in invested capital the appreciation in the value of its assets, principally good will. We have no doubt from the evidence that by 1912, and also by 1917, a valuable good will had been built up. We are of the opinion, however, that this is not an abnormal condition in the case of any prosperous, well managed corporation, especially one engaged in a business of the character of that conducted by the petitioner. The invested capital of the petitioner was not abnormal by reason thereof.
A further contention for special assessment is that the petitioner in 1912 had a contract with one of its officers by which he agreed to serve it for a period of five years at a stipulated salary, and with another officer by which he agreed to serve the corporation for a period of three years. These contracts had expired prior to 1917. The evidence does not prove any cash value for the contracts in 1912, and if it did it would be immaterial. A further point is made that the petitioner had a valuable contract with Zula Kenyon by which she gave her exclusive services to the corporation for a period of years. The evidence shows that a contract was entered *207 into with Zula Kenyon in 1911, which was modified in 1912, and which was renewed a number of times subsequent thereto. There is nothing to indicate that Zula Kenyon was not paid fair compensation for her services or that the contract had a monetary value. It may have been good business on the part of the petitioner to secure and retain the services of this artist. We do not see, however, that there was any abnormality in invested capital or in income growing out of the several contracts which the petitioner had with her.
It is also contended that the cost of copyrights and of developing certain processes were charged to expense in past years and that those amounts were not reflected in invested capital. The amounts thus charged to expense are not shown by the record, nor is it established that the amounts could not be shown. Neither is the value of the copyrights or of the process shown. We conclude from the entire record that there was no abnormality in invested capital or income for the taxable years which warrants the determination of excess-profits-tax liability under the provisions of section 210 of the Revenue Act of 1917, and section 828 of the Revenue Act of 1918.
Reviewed by the Board.

Judgment will be entered for the respondent.